IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 26, 2008 Session

## STATE OF TENNESSEE v. CHARLES LINCOLN FAULKNER

**Direct Appeal from the Circuit Court for Sullivan County**
**No. S46,737    Phyllis H. Miller, Judge**

_____

**No. E2006-02094-CCA-R3-CD - Filed June 2, 2008**

_____

The Defendant, Charles Lincoln Faulkner, was convicted of selling more than 0.5 grams of cocaine within 1000' of school property and delivery of more than 0.5 grams of cocaine within 1000' of school property. The trial court merged the convictions and sentenced the Defendant to twenty years in prison and a fine. On appeal, the Defendant alleges the trial court erred by: (1) failing to dismiss the charges because of a material variance between the presentment and evidence at trial; (2) failing to exclude evidence of prior bad acts; (3) failing to exclude expert testimony; (4) instructing the jury in error; (5) failing to bifurcate the trial; and (6) sentencing the Defendant in violation of the Sixth Amendment. After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Leslie S. Hale, Blountville, Tennessee, for the Appellant, Charles Lincoln Faulkner.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; Kent Chitwood, Jr., Assistant District Attorney General, for the Appellee, the State of Tennessee.

### OPINION

### I. Facts

The Sullivan County Grand Jury originally issued a presentment charging that the Defendant did "sell or deliver point five (.5) grams or more of a substance containing Cocaine, a Schedule II Controlled Substance, within 1000' of John Sevier Middle School, contrary to T.C.A. § 39-17-417, a Class A felony . . . ." The State moved to amend the presentment, which the trial court allowed. The amended presentment alleged one count of sale of a controlled substance and one count of

delivery of a controlled substance, both in violation of Tennessee Code Annotated sections 39-17-417 and 39-17-432; the amended presentment otherwise conformed with the original presentment that it replaced.

The State presented the following evidence at the Defendant's trial: Deputy Richard McCann, of the Sullivan County Sheriff's Office, testified that he and Angela Sullivan planned an undercover "buy" on January 31, 2001. She was a confidential informant, and, as soon as Deputy McCann met her, he searched her. He then placed a "body wire" on her and searched her car ensuring she possessed no contraband. On cross-examination, Deputy McCann stated that he would not search another police officer making a "buy," but it was policy to search informants. He stated that trust was not a factor in his decision to search Sullivan.

Angela Sullivan testified that she knew the Defendant through his wife, with whom she attended high school. Prior to the "buy," she had known the Defendant for four to six months. During that time, she "met with him" seven or eight times, always at the Minute Market on Center Street in Kingsport. Originally, it was the Defendant's idea to meet at the Minute Market; then, the Minute Market became their regular meeting place.

Sullivan further testified that she first approached the law enforcement of Sullivan County about working together because she had been charged with attempt to obtain narcotics by fraud and criminal solicitation. Sullivan stated that, although no promises were made to her, she felt as though she could "help her case" by becoming a confidential informant. She faced two to six years for her conviction, and she received two years of probation. She once violated her probation by failing a drug test, for which she spent seventy-six days in jail. Sullivan also admitted that she previously pled guilty to selling ecstasy fourteen years ago in South Carolina.

Sullivan stated that, on the day in question, she met the officers at a preassigned location. She and her car were both searched, and she then made a phone call to the Defendant's pager. The Defendant called Sullivan back, and Sullivan told the Defendant that she wanted to purchase cocaine. The Defendant stated that he would need to call her back, which he did. He told Sullivan that the deal was a "go," and they should meet him at "the place" they had previously met. Sullivan and Agent Kinser, the agent who accompanied her on the purchase, then proceeded to the Minute Market. When they arrived at the Minute Market,[1] the Defendant was standing by a pay phone with a group of individuals. He approached the vehicle and got in on the rear passenger side. Once inside, they exchanged greetings, and the Defendant "pulled out a baggie with rock cocaine in it" and passed it to Agent Kinser. Officer Kinser handed the Defendant five hundred dollars, and they said good-bye.[2]

---

[1]Sullivan identified on a large map precisely where she parked the car at the Minute Market and from where the Defendant approached.

[2]Sullivan stated that she was wired throughout the transaction, and a tape of the transaction was played for the jury.

2

On cross-examination, Sullivan testified that she received payments for being a confidential informant on prior occasions but not in this instance. Sullivan stated that, after the purchase, the Defendant walked back to where she initially saw him standing when they drove up.

Agent Shannon Kinser, with the Tennessee Bureau of Investigation ("TBI"), testified that he and Sullivan worked together once prior to this occasion. On this occasion, Sullivan arrived at the designated location, the police searched her, and she called the Defendant. The police placed a wire on Sullivan, and Agent Kinser proceeded with Sullivan to the Minute Market where the deal was to take place. When they approached, the Defendant was standing with three to four other gentlemen. They parked at the Minute Market,[3] and the Defendant approached and entered their vehicle. After the transaction, Sullivan and Kinser drove away from the Minute Market the same way as they had come.

In specifically describing the transaction, Agent Kinser stated that the Defendant entered the car, and Sullivan introduced the Defendant as "Sean." The Defendant handed Agent Kinser a bag of what appeared to be rock cocaine, and Agent Kinser asked the Defendant if it was worth $500. The Defendant responded that it was, and Agent Kinser asked him if he weighed it. The Defendant responded that he had not, but his "boy" had. Agent Kinser paid the Defendant $500, and the Defendant exited the vehicle.[4]

On cross-examination, Agent Kinser stated that he did not take pictures of the drugs before they were sent to the TBI. He stated that he could not specifically remember what the Defendant did after exiting the car, but Kinser recalled seeing the group of men with whom the Defendant was standing get in a car and leave. He asked his surveillance team to obtain the tag number on that car. Agent Kinser stated that he felt as though the amount of drugs he received for his $500 was "a little light, but it's not uncommon for the first purchase that a new person makes." He stated that, as a general rule when staging a drug buy, he tries to buy as much as possible. On redirect-examination, Agent Kinser testified that, when he arrived at the Minute Market, he was unaware of the location of John Sevier Middle School.

Jake White, the Geographic Information Systems manager for the City of Kingsport, testified that he prepared and updated maps for the city. He testified that he prepared a map for the Defendant's trial that showed John Sevier Middle School and the property around it. Around John Sevier Middle School, White included a 1000' zone, highlighted in a different color. The map showed 1108 Center Street, the Minute Market, within the 1000' zone around John Sevier Middle School. White additionally stated that he performed a visual inspection of the area to verify the map.

On cross-examination, White testified that the map included a red border around the John Sevier Middle School's property. The border did not delinate the boundaries of the school buildings,

---

[3]Agent Kinser identified on a large map precisely where Sullivan parked the car.

[4]The tape recording of the transaction was again played for the jury. Agent Kinser narrated the recording.

3

but the real property of the school. White measured the map with a ruler and determined that the points marked on the map by the witnesses were between 800' and 900' from the real property of the school.

Amy Gatley, the Community Relations Coordinator for the Kingsport City Schools, testified that she is familiar with John Sevier Middle School, and, after examining the large map, she identified it on the map. She stated that the area within the red border is the real property of John Sevier Middle School.

Celese White, a drug chemist for the TBI, testified that the substance bought from the Defendant tested positive for cocaine. More specifically, the rock-like substance weighed 3.3 grams and was cocaine base. On cross-examination, White stated that the machine takes less than ten seconds to perform the first test, and then a graph is printed with the results. White stated that the last person to use the lab equipment is always responsible for cleaning it, and she admitted that she did not clean the equipment before using it.

Officer Glenn Cradic, with the Second Judicial District Drug Task Force, testified that he met with Sullivan, Agent Kinser, and Agent McCann prior to the drug purchase to discuss the deal. Officer Cradic stated that his role was as surveillance, and, in that role, he followed Sullivan and Agent Kinser to the Minute Market when they purchased the drugs. Officer Cradic stated that he pulled over two blocks before the Minute Market and listened to the transaction through a transmitter. After the transaction, Officer Cradic heard Agent Kinser state that they were leaving the scene, and Officer Cradic pulled in behind Sullivan and Agent Kinser and followed them back to a predetermined location.[5]

On cross-examination, Officer Cradic stated that maps showing school zones like the one used at trial have been available for approximately three years. Officer Cradic testified, though, that he would not intentionally set up a drug deal within a "school zone." Officer Cradic also stated that he photocopied the money used to pay the Defendant. This is generally done so the serial numbers can be identified if the money is later discovered. This money was never discovered.

Agent Brian Bishop, the Director of the Second Judicial District Drug Task Force, testified that he ultimately decides whether to purchase drugs from dealers. Agent Bishop testified that he did not select or direct where this drug purchase took place, and he did not know the distance between the Minute Market and John Sevier Middle School. He stated that, prior to the purchase, he drove by the area where the purchase was to be made, and he saw the Defendant standing in approximately the same place as where he was when Agent Kinser and Sullivan arrived for the purchase. Agent Bishop testified that, after the purchase, he measured the distance between the John Sevier Middle School grounds and an area past the Minute Market lot where the transaction took place. He identified the distance as 890' 9".

---

[5]As it is not in issue, testimony about the chain of custody has been omitted.

4

Based on this evidence, the jury convicted the Defendant of the sale of more than 0.5 grams of cocaine within 1000' of a school, and delivery of more than 0.5 grams of cocaine within 1000' of a school. The trial court merged the convictions.

At the sentencing hearing, Agent Bishop testified that the Defendant had a history of prior cocaine sales in the community, and he was uncooperative in the sense that he did not aid in subsequent investigations. The State additionally submitted a burglary conviction from Alabama, and two misdemeanor convictions for passing worthless checks. The court determined the convictions were not enough to enhance the Defendant's sentence. The trial court found also no mitigation factors applied and, thus, sentenced the Defendant to the presumptive twenty year sentence.

## II. Analysis

On appeal, the Defendant has asserted eleven separate allegations of error. We have condensed these issues as follows: (1) the trial court erred by failing to dismiss the charges because of a material variance between the presentment and evidence at trial; (2) the trial court erred by failing to exclude evidence of prior bad acts; (3) the trial court erred by failing to exclude expert testimony; (4) the trial court erred by instructing the jury in error; (5) the trial court erred by failing to bifurcate the trial; and (6) the trial court erred by sentencing the Defendant in violation of the Sixth Amendment.

## A. Presentment, Variance, and Evidence

The Defendant's chief complaint is that the presentment does not specify whether the 1000' border was measured from the school buildings or the real property of the school. The trial court determined that the language of the presentment was sufficient to allege 1000' from the real property of the school and thus prevented the Defendant from introducing evidence that the location of the sale was more than 1000' from the school buildings. We will first address the sufficiency of the presentment and then the issues flowing therefrom.

## 1. Sufficiency of the Presentment

Initially, the Defendant argues that the presentments did not charge the Defendant with selling cocaine within 1000' of the *real property* of a public middle school. The question of the validity of an indictment is one of law and, as such, our review is de novo. *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). Pursuant to the provisions of both the Tennessee and United States Constitutions criminal defendants have a right to know "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. "As Tennessee courts have held, in order to satisfy the constitutional requirement, an indictment or presentment must provide a defendant with notice of the offense charged, provide the court with an adequate ground upon which a proper judgment may be entered, and provide the defendant with protection against double jeopardy." *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991). A "valid indictment is an essential jurisdictional element, without which there can be no prosecution." *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn. 1998);

*Hill*, 954 S.W.2d at 727. Tennessee Code Annotated section 40-13-202 states:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment . . . .

The presentment with two counts charging the Defendant with selling and delivering cocaine withing 1000' of John Sevier Middle School both follow the same pattern. Count One states:

> The Grand Jurors for Sullivan County, Tennessee, duly empaneled and sworn, upon their oath, present and say that **CHARLES FAULKNER** on or about January 31, 2001, in the State and County aforesaid and before the finding of this Presentment did unlawfully, feloniously, and knowingly sell point five (.5) gram or more of a substance containing Cocaine, a Schedule II controlled substance as classified by the Tennessee Drug Control Act within 1000 feet of John Sevier Middle School, contrary to Tennessee Code annotated, Sections 39-17-417 and 39-17-432, a Class A felony, and
> 
> Against the peace and dignity of the State of Tennessee.

Generally, section -417 proscribes the selling or delivering of a controlled substance, of which cocaine is one. Under this section, selling or delivering cocaine is a Class B felony. T.C.A. § 39-17-417(c)(1) (1997). Section -432, titled "Drug-Free School Zone – Enhanced criminal penalties for violations within zone" created a 1000' buffer zone around schools. That section specifically states,

> A violation of § 39-17-417 . . . that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school or secondary school shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

T.C.A. § 39-17-432(b) (1997).

We conclude that the presentments charging the Defendant with selling drugs within 1000' of a school is sufficient to provide "notice of the offense charged, provide the court with an adequate ground upon which a proper judgment may be entered, and provide the defendant with protection against double jeopardy." *Byrd*, 820 S.W.2d at 741. The Defendant argues that the failure to include in the presentments that the 1000' parameter begins at the real property, rather than the buildings of the school, renders the presentments insufficient. We disagree. The presentments are legally sufficient to allege that the Defendant sold or delivered drugs within 1000' of the real property of a school, especially considering the presentment referenced the statute in issue. This specificity is sufficient to satisfy legal requirements.

### 2. Material Variance

The Defendant next argues that, because the presentments were insufficient to allege he sold drugs within 1000' of the real property of a school, the proof at trial was a material variance to the presentments, and the State presented insufficient evidence to convict. Because we concluded the presentments were legally sufficient, we do not need to address the Defendant's material variance argument as the proof at trial coincided with the allegations in the presentments. *See State v. Shropshire*, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000) ("A material variance occurs only if the prosecutor has attempted to rely on theories and evidence at the trial that were not fairly embraced in the allegations made in the charging instrument.") (citing *State v. Easly*, 959 S.W.2d 605, 609 (Tenn. Crim. App. 1997)).

### 3. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence.

*Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant's convictions and sentence were based on two statutes: one makes the sale or delivery of more than 0.5 grams of cocaine a felony; and the other enhances the penalty if that sale or delivery occurs within 1000' of a school. T.C.A. §§ 39-17-417, -432. "Deliver" is defined by statute as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." T.C.A. § 39-17-401(6) (1997). "Sale" is defined by case law as "a bargained for, offer and acceptance and an actual or constructive transfer or delivery of the substance." *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). The evidence presented at trial showed the Defendant entered into a car with a confidential informant and a police officer. Two witnesses testified that, in exchange for $500, the Defendant gave the officer what appeared to be crack cocaine. Laboratory tests confirmed the substance was 3.3 grams of crack cocaine. Two witnesses further testified that the location of the sale and delivery was within 1000' of the real property of John Sevier Middle School. The evidence presented is sufficient to sustain the Defendant's convictions.

### B. Evidence of Prior Acts

The Defendant alleges that the trial court erred in failing to grant a mistrial after Sullivan testified she had met the Defendant at the Minute Market seven or eight times prior to this meeting. Specifically, the testimony in issue is as follows:

Q: Okay, and prior to January 31, 2001, how long did you know the Defendant?
A: Approximately four to six months.
Q. Okay, and in that four to six month period how many times would you say you met with the Defendant?
A: Seven or eight times.
Q: Okay, and when you and the Defendant would get together or meet, would you meet at a certain place?
A: Yes.
Q: Okay, and where is that?
A: The Minute Market on Center Street.
Q: In Kingsport?
A: Yes.

The Defendant objected in a bench conference outside the earshot of the jury. After hearing arguments from the Defendant and the State, the trial court determined the evidence was relevant to whether the State lured the Defendant to within 1000' of the school and allowed the testimony. The questioning continued with Sullivan never explaining why she met with the Defendant. Ultimately, when asked whose idea it was to meet at the Minute Market, Sullivan stated, "His suggestion to begin with, and then since it was, we had met there several times, I might call him or

page him, he would call me and I would say 'do you want to meet at the same place,' so –."

The Defendant again objected noting that the pager referenced in the statement was likely the same one used in the purchase in this case. The trial court held a jury out hearing, at which the Defendant argued that he had not raised the defense of entrapment, or made an issue of identity or mistake, and therefore the testimony was not relevant. The State responded that the line of questioning "was to show that they had met there before, [and] it was the defendant's idea to meet there . . . ." This would show the State was not trying to entrap the Defendant. The trial court found that "it's relevant for [the State] to establish that they met there." The trial court additionally noted that, although Sullivan did not specifically state she met the Defendant to purchase drugs, the jurors "are not idiots, you don't just drop out of the sky, you know, there was a relationship."

The decision of whether to grant a mistrial is within the sound discretion of the trial court. *State v. McKinney*, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). Normally, a mistrial should be declared only if there is a manifest necessity for such action. *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). One description of manifest necessity is that, "[i]f it appears that some matter has occurred which would prevent an impartial verdict from being reached," a mistrial must be declared. *Id*. Additionally, a manifest necessity exists when "no feasible alternative to halting the proceedings" exists. *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. Crim. App. 1981). The defendant bears the burden of establishing a manifest necessity. *State v. Seay*, 945 S.W.2d 755, 764 (Tenn. Crim. App. 1996). This Court will not disturb that decision unless there is an abuse of discretion. *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990); *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

The Defendant asserts that the need for a mistrial arose because this testimony is proof of prior bad acts – that Sullivan met with the Defendant on previous occasions to purchase drugs. The Defendant alleges this evidence was used to show he was a drug dealer, and he conformed to that character trait on this occasion, violating Tennessee Rule of Evidence 404(b). Rule 404(b) provides:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
>
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

The evidence, that Sullivan met the Defendant on seven or eight prior occasions at the Minute Market would, upon first glance, appear to be an "act." However, the Tennessee Supreme Court has limited the "act" in 404(b) to "wrongful acts" as stated in *State v. Reid*, 213 S.W.2d 792, 813 (Tenn. 2006). In *Reid*, the defendant complained that evidence he possessed a handgun and knife after the crime was inadmissible under Rule 404(b). *Id*. The Court concluded that, "because the possession of a weapon is not *necessarily* a crime or *wrongful* act" the evidence was not prohibited by Tennessee Rule of Evidence 404(b). *Id*. (emphasis added). First, this statement of the law appears to limit Rule 404(b) to *bad* acts. Moreover, if the act is not *necessarily* bad, no 404(b) issue exists. Thus, we might characterize the rule as only applying to *explicitly* bad acts. Here, the evidence was only *implicitly* bad through the jury's consideration of the circumstances: the Defendant, on trial for dealing drugs at a particular location, has met a drug purchaser at that location on several prior occasions. If this is the law as contemplated by the Tennessee Supreme Court, the evidence in issue is not objectionable under Rule 404(b). Thus, the trial court was not in error to allow the evidence.[6]

If, however, Rule 404(b) covers seemingly benign acts, such as meeting someone at a convenience store, implicitly bad in light of the circumstances, our analysis must continue. Pursuant to the requirements of Rule 404(b), the trial court considered the State's argument that the evidence was introduced to show the State did not entrap the Defendant. This appears to fall squarely within the prohibited portion of the rule: the Defendant has a character trait of frequenting the Minute Market, and he acted in conformity therewith on this occasion. Despite this, the evidence would be admissible if an element of the crime was that the Defendant had a tendency to frequent the location; this was the State's argument. We agree, however, with the Defendant that his tendencies are not an element of the crimes charged. The State was only required to prove the Defendant sold cocaine at this location on this occasion.

The tendencies might, instead, be relevant to a defense of entrapment. At the point the evidence was presented, however, no defense of entrapment had been raised. As further discussed in the section on jury instructions, a trial court is required to instruct on entrapment if the proof "fairly raises" the issue. *See State v. Bult*, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998). Thus, the question of whether the defense was "fairly raised" at the time of the testimony is important. In our view, the defense would not be "fairly raised" unless, prior to the testimony in issue, someone testified that the Defendant was not "predisposed" to sell drugs within the 1000' school zone. *See* T.C.A. § 39-11-505 (1997) ("It is a defense to prosecution that law enforcement officials, acting

---

[6]Although not specifically argued, the evidence would still need to pass basic relevancy requirements. *See* Tenn. R. Evid. 401, 402. As noted below, the evidence was not relevant to entrapment at the time the State introduced it. The evidence does, however, have some relevancy to show the basis for the witness's identification of the defendant and as background information. Further, it is not subject to the stringent test in *Gilliland* as it is not evidence of a prior bad act. The trial court would then need to conclude that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice – the jury inferring that the Defendant was previously a drug dealer and was thus one on this occasion. *See* Tenn. R. Evid. 403. We conclude that a decision finding the probative value is not substantially outweighed by the danger of unfair prejudice is supported by the evidence and not an abuse of discretion.

either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so.").[7]

Sullivan testified early in the trial. Prior to her testimony, Deputy McCann testified on direct examination about searching Sullivan before the purchase. On cross-examination, Deputy McCann offered no evidence on the Defendant's tendencies in issue. After Deputy McCann testified, Sullivan took the stand and described how she came to know the Defendant. She then immediately stated, in response to a question, that she had met the Defendant "seven or eight times" at the Minute Market. At this point, we agree with the Defendant that the issue of whether the Defendant was predisposed to sell drugs at the Minute Market, or otherwise within the 1000' border, was not in issue. If someone, either through cross-examination or direct testimony, testified that the Defendant was lured into the 1000' zone, the testimony would then have relevance. Until then, the testimony should not have been admitted for this purpose, and it was error to do so.

We further conclude the information is not necessary under *State v. Gilliland* to provide background. *See* 22 S.W.3d 266, 271 (Tenn. 2000). Under this narrow exception, three requirements are needed:

> (1) the absence of the evidence would create a chronological or conceptual void in the state's presentation of its case; (2) the void created by the absence of the evidence would likely result in significant jury confusion as to the material issues or evidence in the case; and (3) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

*Id.* at 272. The lack of testimony that the Defendant met Sullivan at the Minute Market on seven or eight prior occasions does not create a chronological or conceptual void in the State's case. The issue in this case is whether or not the Defendant sold cocaine within a 1000' school zone. Although the jury may be left wondering how the informant came to know the Defendant, the answer is irrelevant to the central question. This exception to the exclusionary rule does not apply.

Finally, we also conclude that the evidence could not be used at this time to help prove identity. The identity of the Defendant was not a material issue and was not contested. Under *State v. McCary*, 404(b) evidence should not be used to show identity unless it is a "material issue." 922 S.W.2d 511, 513 (Tenn. 1996); *see* Tenn. R. Evid. 404(b)(2) ("The court must determine that a material issue exists other than conduct conforming with a character trait . . . ."). Thus, if Rule 404(b) covers *implicitly* bad acts, the trial court was in error to allow the evidence, because there was no "other purpose" for which it was relevant at the time it was admitted.

We cannot, however, conclude that the testimony required a mistrial. Again, the burden is a "manifest necessity." A manifest necessity exists when there is "no feasible alternative to halting

---

[7]As the evidence at trial did not show this, we express no opinion about whether such evidence would actually constitute a defense to the Drug Free School Zones Act.

11

the proceedings." *Knight*, 616 S.W.2d at 596. When determining whether a mistrial is necessary after a witness had injected improper testimony, this Court has often considered the following factors: (1) whether the improper testimony resulted from questioning by the state or was it a gratuitous declaration, (2) the relative strength or weakness of the state's case, and (3) whether the trial court promptly gave a curative instruction. *See State v. Lawrence Taylor*, No. W2002-00183-CCA-R3-CD, 2003 WL 402276, at *4 (Tenn. Crim. App., at Jackson, Feb. 14, 2003), *no Tenn. R. App. P. 11 application filed*. As the trial court noted, the jury would likely infer that she previously purchased drugs from the Defendant. This testimony was solicited by the State, and the trial court did not give a curative instruction. The impact of such testimony, however, is limited because of the overwhelming nature of the evidence. In our view, despite the fact that this limited line of questioning should not have been admitted at this stage of the proceedings, we do not agree that there was a manifest necessity for a mistrial. The Defendant is not entitled to relief on this issue.

### C. Expert Testimony

The Defendant next argues that the trial court erred in allowing two experts to testify. As stated by *McDaniel v. CSX Transportation, Inc.*, "In general, questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court." 955 S.W.2d 257, 263 (Tenn. 1997) (citing *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993); *accord Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273-74 (Tenn. 2005). "The trial court's ruling in this regard may only be overturned if the discretion is arbitrarily exercised or abused." *Id*. Specifically, the rules that govern the admissibility of such evidence are Tennessee Rules of Evidence 702 and 703. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

In addition to complying with Rules 702 and 703, the evidence must be relevant under Rule 401. *McDaniel*, 955 S.W.2d at 264 n8. Therefore, the trial court must "determine that the expert testimony is reliable in that the evidence will substantially assist the trier of fact to determine a fact in issue and that the underlying facts and data appear to be trustworthy." *Brown*, 181 S.W.3d at 274.

## 1. James White

James White, the manager for the Geographic Information System for the City of Kingsport, testified that he prepared a map of the area in issue and, with the aid of a software program, he highlighted a 1000' buffer zone around John Sevier Middle School. Included in that 1000' zone was the location of the sale. Upon questioning by the Defendant, White stated that the underlying data used to make the map was parcel information, aerial photographic information, and ownership information. The parcel information was taken from the Sullivan County Tax Assessor's Office, based on deeds and surveys at the Deed of Recorder's Office. White admitted he did not personally check the basis for the deeds and surveys; that was the responsibility of the tax assessor.

White further stated that a third party checked the accuracy of the aerial photography using photogemetric methods. To his knowledge, the State quality controlled the maps, but White was unsure if they were subject to peer review. White calculated the margin of error to be eight feet. Thus, something pictured on the map was always within eight feet of its actual location on the face of the earth. These maps are accepted within the scientific community. White admitted that he had not physically measured the distance as pictured on the map. Based on his questioning, the Defendant objected to White being tendered as an expert. The trial court overruled the objection.

We conclude that the evidence is relevant to the distance of the drug sale from John Sevier Middle School. White's specialized knowledge and his map clearly would assist the jury in determining this factual question. The Defendant focuses his objection on White's lack of trustworthiness under Rule 703. We cannot conclude that the trial court abused its discretion in finding White was trustworthy, and his basis of information was trustworthy. The Defendant has presented no basis to conclude that the underlying photographs, ownership, and parcel information is anything but reliable.

## 2. Celeste White

The State called Celeste White, the TBI chemist, to testify that the substance purchased from the Defendant was 3.3 grams of crack cocaine. The record shows she was questioned about her credentials by the State, and the State asked she be tendered as an expert. The Defendant questioned White about her tests, then stated, "Okay, I don't have anything further, thank you, at this time." The trial court then stated, "All right, I find that Ms. White is qualified to testify as an expert in the field of drug chemistry and analysis." Because the Defendant did not object to the witness being tendered as an expert, he has waived this issue on appeal. *See* Tenn. R. App. P. 36(a). He is not entitled to relief on this issue.

## D. Jury Instructions

The Defendant makes five arguments with respect to the jury instructions: (1) the instructions were insufficiently specific; (2) the instructions had the effect of creating a duplicitous charge; (3)

13

the trial court erred in instructing on lesser included offenses; (4) the trial court erred in failing to instruct on entrapment; and (5) the trial court failed to require the State to elect whether the distance would be measured from a school building or the real property.

A trial court has the duty, in criminal cases, to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. *See State v. Burns*, 6 S.W.3d 453, 464 (Tenn. 1999); *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998). Nothing short of a "'clear and distinct exposition of the law'" satisfies a defendant's constitutional right to trial by jury. *State v. Phipps*, 883 S.W.2d 138, 150 (Tenn. Crim. App. 1994) (quoting *State v. McAfee*, 737 S.W.2d 304 (Tenn. Crim. App. 1987) (quoting *Strady v. State*, 45 Tenn. 300, 307 (1868))). In other words, the court must instruct the jury on those principles closely and openly connected with the facts before the court, which are necessary for the jury's understanding of the case. *Elder*, 982 S.W.2d at 876. Because questions of the propriety of jury instructions are mixed questions of law and fact, our standard of review here is de novo, with no presumption of correctness. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

"A defendant has a constitutional right to a correct and complete charge of the law." *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990), *superceded by statute on other grounds as stated in State v. Reid*, 91 S.W.3d 247 (Tenn. 2002). When reviewing jury instructions on appeal to determine whether they are erroneous, this Court must "review the charge in its entirety and read it as a whole." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Stephenson*, 878 S.W.2d 530, 555 (Tenn. 1994)). The Tennessee Supreme Court, relying on the words of the United States Supreme Court, has noted that:

> [J]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380-81 (1990)). A jury instruction is considered "prejudicially erroneous," only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Id.* Even if a trial court errs when instructing the jury, such instructional error may be found harmless. *State v. Williams*, 977 S.W.2d 101, 104 (Tenn. 1998). With this in mind, we turn to the Defendant's claims with regard to his jury instructions.

### 1. Insufficient Specificity

First, the Defendant argues that the jury instructions were insufficiently specific because the trial court only specifically instructed the jury that the sale or delivery had to occur "within 1000' of real property that comprises a public middle school" one time each – i.e., once for sale and once for delivery. The Defendant notes, "Other than the two instructions, every other instruction refers to the

crime occurring within '1000 feet of school property,' and does not reference that the school must be a middle school." The statute makes it a crime to sell or deliver more than 0.5 grams of cocaine within 1000' of a school's real property. T.C.A. § 39-17-432. Upon our review of the jury instructions, we fail to see how the instructions, in any way, do not "fairly submit the legal issues or . . . mislead[] the jury as to the applicable law." *Hodges*, 944 S.W.2d at 352. The instructions on this issue are sufficient.

The Defendant additionally argues that the jury made no factual finding that the school was a public middle school, and he cites *State v. Fields*, 40 S.W.3d 435, 439-40 (Tenn. 2001), for support. In *Fields*, the jury convicted the defendant of facilitation of the sale of cocaine. *Id.* at 439. The Tennessee Supreme Court determined that she should not be denied alternative sentencing on the basis that the sale occurred within 1000' of a school because she was neither indicted nor convicted under the Drug Free School Zones Act. *Id.* at 440. This case is inapplicable to the Defendant's case because the Defendant was convicted under the Drug Free School Zones Act. We find no support for the Defendant's assertion that the jury must specifically state whether the school was public or private, or elementary, middle or secondary, especially because the statute allows a conviction for any of these. T.C.A. § 39-17-432 ("public or private elementary school, middle school or secondary school . . . ."). The Defendant is not entitled to relief on this issue.

### 2. Duplicitous Charge

The Defendant next claims that the trial court erred in instructing the jury because the pattern jury instruction used for "sale" and "delivery" have the effect of creating a duplicitous charge. "Deliver" is defined in Tennessee Code Annotated section 39-17-402(6) as "the actual, constructive or attempted transfer from one person to another of a controlled substance whether or not there is an agency relationship." Although not defined by the statute, the pattern jury instructions given by the court define sale as "a bargained for, offer and acceptance and an actual or constructive transfer or delivery of the substance." T.P.I. – Crim. 31.01 (10th ed.). As noted in the footnotes to the definition, the definition of "sale" is taken from *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). The Defendant asserts that, because the word "delivery" is a portion of the definition of "sale," the "sale" presentment is duplicitous, and duplicity is fatal to a presentment.

Generally, it is impermissible to charge two distinct offenses in a single count indictment. *See State v. Jefferson*, 529 S.W.2d 674, 678 (Tenn. 1975). In other words, "all crimes arising from the same incident that are not lesser included offenses of another crime charged in the indictment must be charged in separate counts." *State v. Gilliam*, 901 S.W.2d 385, 389 (Tenn. Crim. App. 1995). In the case at bar, the Defendant was charged in separate counts, thus the charge is not duplicitous. *See State v. Angela E. Isabell*, No. M2002-00584-CCA-R3-CD, 2003 WL 21486982, at *3 (Tenn. Crim. App., at Nashville, June 27, 2003) ("[I]f the indictments underlying the offenses had charged the offenses in separate alternative counts; e.g., count one the sale of crack cocaine, count two the delivery of crack cocaine; the indictment would not be faulty."), *no Tenn. R. App. P. 11 application filed*. The jury instructions were, in this respect, consistent with the law. We recognize the Defendant's argument, that sale includes delivery, is sound based on the definitions.

We see no harm, however, because the charges were separate.

Separately, the Defendant argues that the "delivery" charge is similarly duplicitous because it necessarily includes attempted delivery. Our review of the record indicates that the trial court did not instruct the jury on attempt to deliver cocaine within 1000' of school property. This decision was proper because "delivery," in effect, includes attempted delivery. Such is similarly the case with resisting arrest and attempting to resist arrest – there is no such crime. *See State v. William Harlon Adams*, No.M2003-02952-CCA-R3-CD, 2005 WL 1353301, at *9-10 (Tenn. Crim. App., at Nashville, June 8, 2005), *perm. app. denied* (Tenn. Dec. 5, 2005). There being no crime, the charge was not duplicitous. The Defendant is not entitled to relief on this issue.

### 3. Lesser Included Offenses

The Defendant next asserts that the trial court erred in instructing the jury on criminal responsibility, attempt to sell, and facilitation to sell or deliver, and not instructing on solicitation. The Defendant admits he did not object to these issues at trial or in his motion for a new trial.

A trial court is required to instruct on crimes "supported by the evidence." *State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006). Despite this, Tennessee Code Annotated section 40-18-110(c) places a burden on the defendant:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

> (c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

In analyzing this issue, the Tennessee Supreme Court stated, "While an erroneous or inaccurate jury charge may be cited as error for the first time in a motion for a new trial or on appeal, a trial court's incomplete jury charge may be cited as error on appeal only if the defendant requested a lesser-included offense charge at trial." *Page*, 184 S.W.3d at 229 (citing *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005)). Thus, because the Defendant alleges the instructions given to the jury on criminal responsibility, attempt to sell, and facilitation to sell or deliver were erroneous, we will address those claims.

### a. Solicitation

The Defendant's first complaint, that the court failed to charge solicitation, is, in our view,

a claim that the court gave an incomplete charge. The State notes that the Defendant did not request the trial court charge solicitation. Under *Page*, because this charge was not requested, the issue is waived. *Id*.

### b. Criminal Responsibility

The Defendant argues that, because the presentments did not allege the conduct was as a result of criminal responsibility, *see* T.C.A. § 39-11-402 (1997), the failure to include such a provision prohibited the State from presenting evidence thereof and the court from instructing thereon. The Defendant fails to cite any authority in support of this position. *State v. Lemacks* directly addressed this argument and rejected it. 996 S.W.2d 166, 169-71 (Tenn. 1999). The Defendant is not entitled to relief on this issue.

### c. Attempt and Facilitation

The Defendant next argues that the trial court erred in instructing the jury on attempt to sell more than 0.5 grams of cocaine within 1000' of school property, facilitation of sale of more than 0.5 grams of cocaine within 1000' of school property, and facilitation of delivery of more than 0.5 grams of cocaine within 1000' of school property. The Defendant argues that, because section -432 states solicitation to commit a section -417 crime within 1000' of a school is similarly treated as one classification higher, this necessarily excludes attempt and facilitation crimes.

We disagree; in our view, the criminal attempt provisions apply to Drug Free School Zones crimes. If one attempts to sell cocaine within 1000' feet of a school, he is guilty of attempt to commit a section -417 crime, with an enhanced penalty under section -432. This same logic applies to facilitation. The trial court did not err in instructing the jury on attempt and facilitation crimes. The Defendant is not entitled to relief on this issue.

### 4. Entrapment

Next, the Defendant argues that the trial court erred in refusing to instruct the jury on entrapment. Tennessee Code Annotated section 39-11-505 provides for the defense as follows:

> It is a defense to prosecution that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so. If a defendant intends to rely on the defense of entrapment, the defendant shall give to the district attorney general a notice comparable to that required for an insanity defense under Rule 12.2 of the Tennessee Rules of Criminal Procedure.

This Court in *State v. Blackmon* further described the threshold showing needed for a trial court to instruct on entrapment:

The threshold question of whether the defense of entrapment has been "fairly raised" is for determination by the judge and not the jury. Nonetheless, where the proof fairly raises the issue of entrapment, and the proof is supported by credible evidence, the trial court is required to give the instruction of entrapment whether requested or not. To determine when this statutory defense is fairly raised by the proof so as to require its submission to the jury, a court must, in effect, consider the evidence in the light most favorable to the defendant, including all reasonable inferences flowing from that evidence. *See State v. Bult*, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998), *perm. to appeal denied*, (Tenn. 1999) (citing *State v. Shropshire*, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993)). Thus, if entrapment is, in fact, "fairly raised by the proof," the issue of predisposition becomes a question of fact for the jury. *See also Sherman v. United States*, 356 U.S. at 377, 78 S. Ct. 819.

78 S.W.3d 322, 331 (Tenn. Crim. App. 2001).

We recognize that proof that the State lured a defendant into the 1000' school zone would "fairly raise" an entrapment defense. This case, however, presented no facts to support such a claim. In fact, the Defendant repeatedly denied raising an entrapment defense when the State attempted to put on proof that it did not lure the Defendant into the 1000' zone. The issue was not "fairly raised" by the proof, and the Defendant is not entitled to relief on this issue.

### 5. Election

The Defendant additionally argues that the jury's verdict may not have been unanimous because the State failed to elect whether to measure the distance from the real property or the school buildings. The election requirements ensures that "the jury focuses on and is unanimous with respect to that conviction." *State v. Brown*, 992 S.W.2d 389, 392 (Tenn. 1999). The State is required to make an election of offenses "when it is pursuing convictions for discrete crimes and proof of additional discrete crimes has been introduced at trial." *State v. Hoxie*, 963 S.W.2d 737, 742 (Tenn. 1998).

In *State v. Marvin L. Locke*, a panel of this Court indeed concluded that the 1000' border not only applied to the real property, but also the school building. No. E2005-01359-CCA-R3-CD, 2006 WL 2684827, at *2 (Tenn. Crim. App., at Knoxville, Sept. 18, 2006). Under this decision, it would be possible to be convicted of the crime if the evidence showed the Defendant sold cocaine within 1000' of the school building. As noted above, the Defendant attempted to introduce evidence that the location of the sale and delivery was more than 1000' from the school buildings. The trial court prevented this, ruling that such evidence was irrelevant because enhancement could be had if the proof showed the location was within 1000' of a school's real property. The only evidence presented by the State in this case showed that the location of the sale to be within 1000' of the school's real property. In our view, even if the State attempted to present evidence that the location was within 1000' of both the real property and the building, no election would be required because these are not "discrete crimes." Therefore, no election is required under *Hoxie*. The Defendant is not entitled to

relief on this issue.

### E. Bifurcation

The Defendant next argues that the trial court should have bifurcated the trial into a trial on the sale and delivery and a trial on the location. In support of his argument, the Defendant cites to *State v. Antonio Rico Walls*, No. M1998-00358-CCA-R3-CD, 2002 WL 1343234, at \*1 (Tenn. Crim. App., at Nashville, June 20, 2002), *perm. app. denied* (Tenn. Nov. 12, 2002). While *Walls* notes the trial court bifurcated a Drug Free School Zones trial, there is no explanation or analysis of the reason. The Defendant has not cited any additional authority in support of his position, and we know of no reason that would require a trial court to bifurcate this case. The Defendant is not entitled to relief on this issue.[8]

### F. Sentencing

Finally, the Defendant alleges his sentence violates the Sixth Amendment to the United States Constitution, because the trial court's imposition of the twenty-year sentence required judicial fact-finding outside that allowed by *Blakely v. Washington*, 542 U.S. 296 (2004). The underlying felony, sale of more than 0.5 grams of cocaine, is a B felony. T.C.A. § 39-17-417(b) (1997). If the sale occurs within 1000' of a school, the crime is enhanced to become an A felony. T.C.A. § 39-17-432(b) (1997). For A felonies, the sentence range is fifteen to twenty-five years. T.C.A. § 40-35-112(a) (1997). In sentencing for an A felony, a trial court is required to begin at the midpoint in the range, twenty years, and adjust up for enhancement factors and then down for mitigating factors. T.C.A. § 40-35-210(e) (1997). Under recent case law, the ability to enhance under the 1989 Sentencing Reform Act is, for the most part, limited to previous criminal convictions.

The Defendant bases his argument in the fact that the jury verdict did not specify that the school was a "public middle school" or that the sale occurred within 1000' of that school. Therefore, the Defendant argues, the trial court must have conducted independent fact finding in order to enhance the conviction to an A felony. We reject this argument. The jury convicted the Defendant of selling cocaine in violation of the Drug Free School Zones Act. Inherent in this conviction is the fact finding by the jury that the offense occurred within 1000' of a public middle school. The trial court began the Defendant's sentence at the statutorily required 20 years and did not adjust up or down. There is no *Blakely* violation based on these facts. The Defendant is not entitled to relief on this issue.

### III. Conclusion

---

[8]Within this argument, the Defendant also complains that the trial court erred in refusing to instruct the jury that the Defendant needed to know he was inside a school zone. Case law forecloses this argument. *See State v. Smith*, 48 S.W.3d 159, 166-69 (Tenn. Crim. App. 2000); *State v. Jenkins*, 15 S.W.3d 914, 917 (Tenn. Crim. App. 1999).

After a thorough review of the record and applicable law, we conclude the Defendant is not entitled to any relief on these issues. The judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE